www.mylanpharmaceuticals.com We will hear argument next in case number 211729, Astrazeneca against Mylan. Mr. Dufresne, is that it? That's right, Your Honor. Thank you. May it please the Court. The District Court's claim instruction in this case was wrong. Throughout the specification, the key consistent notion expressed again and again was that formulations of 0.001% PVP were different. They were better, they were more stable than all other disclosed formulations. And before the District Court, Astrazeneca urged a broad construction that treated 0.001% PVP as one and the same with 0005%, which was disclosed as a different, less stable formulation. Does anything in the spec say that the lower figures are unacceptably unstable? Your Honor, no. There's no active disparagement like that in the specification. But we don't need to show that here because we're not arguing disclaimer. We're arguing that in the first instance, the person of ordinary skill in the art looking at this specification would understand that 001% was something different than 0005%. And 001 couldn't be construed to be the same as 0005% as Astrazeneca. But it's not the same, right? A little rounding room bubble around 001 is different from a little rounding room bubble around 0005% even though there's a tiny overlap. Overlap does not mean the same. Well, overlap in this case does mean that 0001,  in the district court's construction, that also means 0005. It includes 0005 under that construction. It means exactly pinpoint from 0005 up to, I guess it's down to 0005, but it doesn't mean what 0005 means, which is the bubble around, the rounding room bubble around 0005. If they had claimed 0005, then that would have actually been a different non-pinpoint bubble, a different range. The fact that one overlaps with the other doesn't mean that they are no longer distinguished because they're not identical even if they overlap. That's why I thought your argument really did kind of turn on your suggestion, at least in your opening brief, that 0005 was, let's just use the word disparage to get about whether it's teaching away disparage, in some way disparage, that if you go that far down, you're off into bad territory. I don't see the spec saying that. The spec definitely – there's several questions in there, I think, Your Honor. The specification definitely tells skilled artisans that 0005 was worse than 001. Throughout the specification, again and again, in Column 2, over and over again in Column 6, and in all the data that are described in Column 6, the specification describes 001 as the best, the most stable. That's comparative language. That's telling the skilled artisan that 001 is better than 0005. It makes the problem here more jarring. It makes it clearer to the skilled artisan reading the specification that these two things are different. It would be improper to read 001 as broadly as the district court did in a way that makes 001 extend all the way to 0005. When you say – in that last sentence, when you say 0005, you're no longer talking about bubble 0005. Rounding room meaning of 0005 in the world in which there is such a thing as significant digits. Now you're talking about mathematical 0005, a point on the line. I'm talking about the real-world formulation that's described in the specification as having 0005%. These numbers, when they're used in the specification, they aren't describing an abstract math problem. That's not what's going on here. What we have are these numbers used to express particular formulations that were described in the specification that the inventors prepared and tested, and the 0005 performed much worse than the 001 in every one of those tests. That was a consistent theme throughout the specification, that the 0005 was worse. All of the other formulations were worse. What about the fact that you yourself seem to suggest, and you do suggest, advocate a claim construction that relies on a significant digit? You go to the second digit for your bubble. What about where in that situation, why is the second digit – everybody seems to agree that there should be some amount of error because it's really hard to have a precise number, right? But why is yours correct, and why doesn't yours suggest that there's some agreement that when you look at a number here in this pharmaceutical composition, it's not just a target number, there's some bubble around it? Your Honor, as you suggested, in this case it is clear that there has to be some kind of wiggle room because you can't make these formulations to a level of atomic precision when you're putting them together. So there has to be some boundary. This isn't a case where it can be an exact number. The question becomes how much wiggle room is appropriate. We submit that in this case, a person of ordinary skill in the art, looking at this specification, would conclude that rounding from the third decimal place can't be correct here because that would mean that my 001 would extend to 0005. So you would say all numbers need to be rounded to the 0005 position? Yes, exactly, and that's also consistent with the way the inventors described the precision that we used to make these formulations when they talked about them in the specification. So we have the 001 formulation, but we also have the 0001 and the 0005, and those also produced different data when they were tested. They didn't show exactly the same performance. They were different, too. So that also tells us the person of ordinary skill in the art that when those were formulated and the formulator is putting in a certain amount of PVP to get to that 0001 or 0005, they were able to do it precisely enough that those two tested differently and they were different. So that level of precision was available when they're making up all of these formulations. What other evidence do you think there is, thinking about the public notice function of claims and understanding claims, what other evidence is there to support the scientific knowledge or knowledge of one and one meters down the arc of how we're supposed to determine what the wiggle room is around this particular number without having a word about it, for example, before it? Right. So we believe that the evidence I've talked about, the improper overlap between 001 and 0005, the level of precision shown in the specification going out to the fourth digit and making the 0001 and 0005 indicate that our construction is correct. But I think Your Honor is asking about is there expert testimony. Yeah, is there anything else? I mean, I'm familiar with the specification, the prosecution history, the removal of ranges and the removal of about, but I'm not sure that gives us, again, it's a question of public notice. What would it pose to understand from this language and where did that evidence? So in this case, neither side presented expert testimony at the time of claim construction, and I think that's because this was kind of a late breaking claim construction. We talked about the history of how this progressed, but the parties had agreed at one point that they would both use the ordinary meaning, and then it came close to trial. I think this was about two months before trial when this construction was done, and it became clear that the parties didn't agree on what the ordinary meaning was. And so the district court said, I want briefing on this, and I'll decide it. And so she heard briefing, or she took briefing and heard argument and decided on that basis, but I think there just wasn't time for the parties to put in expert testimony on the question you're talking about, Your Honor. And your current position about mathematical exact .001 plus some, I forget, you used the term like wiggle room, I forget what it was, small deviation or something like that, minor deviation maybe. And when you put numbers on that, the numbers you put on that were precisely the rounding error if you added a second significant digit, namely made it 0010, precisely. And that's what you put in your paragraph four letter as well, right? That was in the notice letter. And I'd been curious until I read that what Judge Keeley meant when she said the parties agreed that the significant digit understanding of these numbers is the right methodology of understanding. And I didn't know until I saw that what the basis for that was, but that sounds exactly right. In fact, your now minor variation from the mathematical exact figure is identical to the rounding version of significant digit if you add a significant digit, namely a zero at the end of 0001. Right, so we agree that rounding is, in general, the way that people can look at numbers and figure out what kind of wiggle room, as you said, is appropriate. But we submit that in the context of this particular patent with this specification and this file history that focused on lifting up the 001 formulation as being different and better than all of the other ones, that just blindly rounding to the third decimal place that's used in the claim would be recognized as being incorrect by a person of ordinary skill given the context of the data and the discussion. Is that because the specification recognizes that precision is important here out to the fourth digit because it tested at least a couple of formulations out to the fourth digit, so it must have understood those compositions could be different and have different results than just out to the third digit, because otherwise you would have just tested out to the third and done rounding there. Yeah, I think that's an important part of it, Your Honor, because the fact that those formulations out to the fourth digit were there and were showing that the difference between those two, the 0001 and the 0005, had a meaningful effect on the performance of those formulations, that shows that the formulations were able to be made with precision out to that level. And if you do rounding out to the fourth digit, you get plus or minus. I mean, if the third digit is all that mattered, then presumably you wouldn't have bothered testing 0005 because it rounds up to 001 anyway. Right, and in fact it wouldn't have been possible if it was true that the only level of precision that matters is the third digit. You wouldn't have been able to reliably make one out to the fourth digit. Of course, 0001 and 0005 wouldn't be reliably different in the data shows otherwise. I would like to go back to a question that Judge Toronto asked you, and that was about the district court statement about how both parties agreed that a poser would interpret the specification to convey that 0.001% term is subject to rounding according to the number of significant digits. Is that true? Because I thought there was a difference between the parties. I think there's a difference between the parties, certainly, as far as how they think rounding should apply to the claim term here. I think both parties have proposed constructions that use rounding to allow for the kind of imprecision that's required here in the context of this invention, but we certainly did not agree on exactly how that should be done or to what decimal point. Exactly, there's a difference on what kind of precision that should reflect. It seems to me like you've potentially confused the district court when you were talking about agreeing on significant digits because, at least to me, out of context, when you're looking at 001 in kind of general math terms, and God knows I haven't taken math since high school, so I don't really know what I'm talking about, but the significant digit is the one, not the one zero. So I get where she came from when you said that, but that seems like a contextual view of what actually are significant for this patent by using that phrase. I think that's exactly right, Your Honor. It is possible that taking .001 as an abstract number on a page, somebody might look at that and say that that should be rounded to, as the district court did in her construction, but I think in the context of this patent where the district court went wrong. Did she actually round that the way we would? I thought she rounded that down to .005 and up to .014, but is that actually right? If you're rounding, wouldn't it round up even further than .014? Wouldn't you add a bunch of digits on past that? I don't claim to be a math scholar either, Your Honor, but I believe if— I'm going to stop asking math questions because I think we have a math scholar here. I believe that the rounding would be from .0005. If you're rounding to the third digit, it would be from .0005 to .0014 because if you got to .0015, then you would round up to .002. I guess what I'm saying is if you added even more digits, it would be 1499 or whatever the number is. It's not 140. It's 14 something above zero. Yeah, you would end up having the plus or minus that you use at the end and it would get smaller and smaller by tenfold. By tenfold each time you go to a different digit to do your rounding. There are no further questions. I'll reserve the zero time I have left. You'll get your rebuttal back. Thank you, Your Honors. Thank you. So, Mr. Burrow, talk about why the construction— why the claim should not be read in context to make clear— the whole spec—make clear that what is significant— I don't mean significant digit. I mean significant in context is through four places. So the answer is—and I'd just like to make this clear because it was clear below. There was no confusion at all below about what the dispute was in this claim. I think they're trying to obscure it here. Everyone understood below that this dispute was are there two significant digits or one? All of this business about the fourth decimal point is entirely new, never mentioned before, never addressed before, and not the subject of construction below. They said below—and you can look, for example, at A7913, where their argument was that the POSA would understand the term to have a second significant figure, not four decimal points, a second significant figure. They said it two pages later. Mr. Burrow, I have a question for you. Are you suggesting that they have a different claim construction or are you suggesting that they've just kind of fine-tuned their argument in support of their claim construction? Because our case law is pretty clear that you can fine-tune your argument in support of your claim construction. What you can't do is assert a new claim construction. I think it's hard to tell the answer to your question, Your Honor. To the extent that they are, again, arguing .0010, two significant figures, I think that's the same construction. But as Judge Toronto noted, they obscured it in their brief. They used other words like minor deviations and other verbatim. I don't think they've changed the amount of deviation. I think they're still arguing the same amount of deviation. So assuming that's so because they can't change their claim construction, what is your response to why, in light of this specification, there shouldn't be—their claim construction isn't correct given that the level of precision in this specification with the different numbers that were tested actually goes out to the fourth digit? Because the POSA would not look at this as the level of precision with respect to how many decimal points it goes out, but rather would look at it with respect to how many significant digits there are. That's a proposition this Court has recognized repeatedly, including, for example, in the U.S. Phillips v. Iwasaka case, in which it explained that .000001 is different than .0000010. And that's simple math. The question is not how many decimal points it goes out to with respect to the level of precision and how much bubble room there is. Don't I have to look at that Phillips case in terms of how it was claimed? I mean, it was claimed in a different way, right? Yes. That was a different mathematical way of writing it up. It was, but the Court noted that it's the same thing. The claim there, I think, said 10 to the minus 6, and the Court— It said that, you know, in this context of this patent, you know, expressing it logarithmically like that meant something different, right? That it wouldn't have wiggle room. Well, it had some wiggle room, but it meant something different than adding a significant digit, and the Court understood that the bubble room, so to speak, depends on significant digits. And I think the Vizcazi case stands for the exact same proposition, where the claim said .000001, and the question in that case, as it is here, and that case was argued below and, of course, argued in our briefs here, was how much wiggle room is there around that? There, they said there's not much wiggle room, but notwithstanding the usual meaning of .912 significant digits, we need more because the patentee, during prosecution, defined the claim to be .910 and below. And in the specification, did the same thing, added a third significant digit. That evidence is completely absent from this intrinsic record. Twenty-three times this amount of PVP is addressed in the specification. Let me tell you what my concern is, a little bit of your argument, because I want to make sure you hear it. I'm a little worried about the public notice function, and let me explain that a little bit more. I mean, you have in the prosecution history and in other related patents, I see you know how to use the word about. I see you know how to claim rames. And I just, I'm left looking at this and thinking, would a POSA looking at this really know that this is how I'm supposed to interpret this, the way the court did here, given that you don't have the word about? This is, it's, there's some more precision. You could have more, could have claimed this with more precision, with a range, or with the word about, or in a way that made it more clear, and you seem to know how to do that in other claims. Or we could have added more significant digits. The point is, I think that we did not do that, and the person of ordinary skill would understand we didn't do that, that we said one significant digit, and that was used consistently throughout the specification, and what that means, there's no dispute between the parties, that it's not mathematical, as Judge Toronto called it, .001. It has a bubble. It has a range. The parties agreed below about that. The parties agree here. So, let me understand this, because it was not apparent to me from the briefing that this is what you're arguing, but you originally claimed a broad range, got rejected, and you ultimately ended up, at least what we're dealing with here, is a claim for .001. Your view is, what that really means is a range from .005 up to .014? One could call it a range. One could call it bubble room around it. What it really means is one significant digit, .001. Everyone agrees it's a range or has a bubble. The question here is simple. How much of a bubble is there? But see, this is my problem, and it's very similar to Judge Stoll's, about the notices here. You have to claim a range. If you really wanted that range from .005 all the way up to .014, you could have claimed it. You're saying that that's inherent in your .001 argument, but this pattern is replete with other ranges that you go to further precision. I think you heard me say to your friend that it seems to me that suggests that you all understood that precision out to four digits could make a difference. So why shouldn't we read that as basically claiming a four-digit number even though you didn't put the .001 after the one? In the context of this. Again, I understand why the district court got here because it seems to me that if you're looking at this one number and not reading it in the context of the patent, but just looking at .001 and saying what does that round up to and round down to, you are precisely correct. But that doesn't answer the question of what this patent meant when it was claiming .001. But respectfully, Your Honor, I think the district court did grapple with the question of in this context of this specification, what does it mean? It means one significant digit. That's why it uses one significant digit every time. Where the patent wants more precision, it adds trailing zeros as it did with the budesonide concentration. It affirmatively did not do that here with respect to PBP. It wants more precision with regards to this specific excipient. It uses four digits when it wants to use a much lower percentage, right? One significant digit again, and the parties agreed below that the level of precision depends on the number of significant digits, not how many decimal points it goes out to. I think that's a different thing. In response to Your Honor's submission that we could have just claimed to 0014. Had we said that, that would have been a claim of a different scope than this one because 0005, as used in Your Honor's example, likewise would have been accorded significant digits and would have gone down as would 0014. The point here, and everyone agreed below, is that these numbers depend on how many significant digits there are. That defines the so-called bubble room, and the only question is two significant digits for one. The intrinsic record is clear that the answer is one, over and over and over again. I'd like to address the prosecution history briefly, Your Honor. It's not correct that in the prosecution history the claim simply issued because it said 001 and somehow excluded other concentrations. That's not true. That's not what it says in the Notice of Allowance. The examiner gave us other claims that went up. The examiner gave us claims that didn't have any PBP concentration whatsoever, so that's sort of a revision of what actually happened. What happened was that there was this combination of elements and all of those combinations of excipients and percentages together were deemed non-obvious and patentable, and one of those percentages is 001, and that was not defined more precisely than 001, one significant digit. I couldn't have said it better than Judge Taranto. Let me ask you a different question. I understand your point. If we disagree and adopt your friend's construction, does that affect the invalidity argument at all? I don't think it affects the invalidity argument. I think the line of no invalidity. If I remember right, the other side makes one point along those lines, namely in discussing the unexpected results component of the analysis that you had really, really good results only in part of the bubble range and not all of it, and if that bubble range shrinks, it changes that analysis. Right. So let me answer it this way. If anything, as I understand their argument, if one construed the claim no more narrowly and added a second significant digit that appears nowhere in the intrinsic record, that would, if anything, make the validity case stronger on our behalf because the scope of unexpected properties would be narrower that we would have to show. I don't think any of that matters. The court found for at least four independent reasons separate and apart from unexpected properties that this claim is not obvious, and those would all have to be overturned in any event. So I think the answer to your question is that the validity analysis wouldn't change. Can I ask you back on the infringement question? So maybe it's just me, but I don't remember seeing in cases that I've sat on at least this significant digit concept play a real role. Why should the – first of all, have I just missed a lot of use of it? And second, if indeed it's fairly rare, what explains why this seems an unusual concept for claim construction in technology patents where numbers are around all of the time? I'm not sure exactly how to answer that. I don't think it's altogether rare. I think the issue – You cited a few cases, but it was – Allergan versus Teva case, for example, out of the Eastern District of Texas, which Judge Bryson was sitting by designation. We cited, of course, Vizcase, which addresses this very question. Do we add an extra significant digit? And I would submit that's the standard that the court applied there and should apply here. Does the intrinsic record mandate that based on statements in the prosecution? I just wanted to follow up on that question. I want to know – I understand there's a number of cases, but one would think in pharmaceutical composition cases where amounts of different materials seem to be so important, that there would be a ton of cases or there would be some convention of how these numbers are going to be understood when there is a single member. And so, again, going back to public notice and patent language, is there some sort of understood way? Do we always have to look at the number one and say, oh, that's not just one. It's 0.5 to 1.49. Or 1.4. Is that how I'm supposed to be looking at every number in a claim from now on? Well, again, I think it depends on the context. I think they bring up the example of one apple, and obviously that's a different situation. One wouldn't come in with one and a half apples and say that's the same thing. That's something you count versus something you measure. But my understanding based on doing this for a few decades is that when there are concentrations in claims like 001, the person still looks at that with respect to significant digits. That's the basic way that this is understood. But there's no evidence to that effect in this case. There is absolutely no evidence in this case of expert testimony or scientific truthsees or anything saying that when a person who deals with pharmaceutical compositions looks at a number, they know that they are to look at 0.001 and understand that they round up and round down based on the significant digit. Well, both parties agreed about that below. It wasn't disputed that significant digits are the way to look at this. Milan just added a second significant digit and said it's double. I understand, but then I see what you're saying, but I have two different digits to pick from here. Correct. And I think the intrinsic record answers the question of how many significant digits there are. In Vizcase, the specification said three significant digits. It repeatedly said 0.910. In prosecution, as the court noted at 1321 of that case, they said 0.910 as defined by the present claims. So they added a third significant digit, a trailing zero in that case, clearly to define their term. And so under the Phillips rubric, the court asked the question, is there enough here to change the typical meaning, the ordinary meaning which everyone would agree to and see for 0.91, two significant digits? In that case, they said yes. You have rejected anything above 0.910. You've said so in the specification. You've said so in distinguishing claims, distinguishing prior art that disclosed 0.910 to 0.940. And that's how you defined it in your intrinsic record. We haven't done that here. The court came to grips with it and looked at the intrinsic record and noted that there's only one significant digit every single time, no trailing zero. This is no more and no less than engrafting a number from nowhere with no support in the intrinsic record onto the claim where we didn't write it. So they can't rewrite our claim. The law doesn't permit them to do that. And the Vizcazi case, I think, is probably the clearest example of how the court addresses the issue of significant digits, understanding the claim meaning. Can I just ask you this kind of – this is more abstractly, although it's obviously related. If you were comparing the numbers 0005 to 001, would you consider them the same number or a different number? They're absolutely different numbers. They both have bubbles. They overlap. How do you know they're different numbers? Because they have different meanings. The 001 has a meaning of 0005 to 0014. The 0005 has a meaning of 00045 to 00054. They're different numbers. They were different embodiments in specification. We're not saying they're the same embodiment. If Your Honor held those two embodiments in your hand, they would be two different embodiments. But one can't import a level of precision to how much PVP those embodiments had. This intrinsic record doesn't permit and assume that we know that's .0010 rather than .001. The specification doesn't say that. So the spec sometimes uses – goes out to four decimal places. Now one possibility for why one would do that is one is just getting smaller and smaller and smaller, getting closer to zero, and you've got no choice but to add a fourth decimal place or a fifth decimal place. That doesn't tell you anything about amounts of precision. Is there any use of four decimal places in the neighborhood of 001 or above it? No. Not with respect to PVP concentrations. Again, with respect to budesonide concentrations, they are more precise in the specification, and it will say something like 75.0. That's telling the person of ordinary skill 74.82. I think this is correct, but let me just make sure I understand. It is just a mathematical corollary of significant digits that the size of the bubble shrinks as you get close to zero. So there's more wiggle room the further north you go, less – and is that – that's right, right? That's correct. Okay, and is there anything about range of experimental error that makes it sensible to have teeny, teeny, teeny bubbles down near zero and slightly larger bubbles as you move north? That's just the level of precision accorded. There was no discussion in the record with respect to measurement precision because, again, that wasn't the construction below that, nothing to do with that. They just wanted to add a second significant digit, again, imported from nowhere. So Your Honor has articulated the principle of mathematics correctly, and that's just sort of how it works. When you have numbers that are smaller, the wiggle room is smaller and the number is smaller. Where numbers get bigger, the wiggle room gets bigger, and that's just how – Well, that's the convention of significant digits. It doesn't have to be that way, but that's the convention. It's true that you have to go to more decimal points the further south you go. Correct, but again, at the risk of repeating, both sides argued below that significant digits were the issue, not the number of decimal points. If you look at their argument, 7909 through 7915, that's entirely clear. Could you explain what you mean by that? Sure. Yes. Sure. So the number of decimal points, as I understand it, again, they never argued this below, is how many numbers follow the decimal point. So if you go out to .0001, that's four decimal points, and you just count that way. That may be relevant to something. It wasn't argued to be relevant to the scope of this claim below or in any case that I'm aware of from this court that they've cited or that I've ever read. Rather, the question is how many significant digits there are, and significant digits are defined by the first non-zero after the decimal point and then trailing zeros thereafter. So the so-called leading zero, the two zeros in .001% are not significant digits under the basic conventions of mathematics. If you wanted to add a second significant digit, .0010, that trailing significant digit is a second significant digit. It's significant. It would narrow the bubble. That's what they want to do. That's not what the specification allows. Maybe their main argument, as I understand it, maybe I think it's their best argument, is that while .001 has a different digit than .0005, by having the patent specification test to that level of precision that is going down to .005, it shows that maybe that is a significant digit for all of the measurements. I think that's what their argument is. And what is your response? My response is that assumes that the claim can only cover one embodiment tested in the specification. They are conflating two questions. How much is in each of those embodiments with the trenchant question here, which is what is the scope of this claim? And it's not correct that just because .001 was tested differently or was better than .0005, that doesn't mean .0005 is outside the scope of the claim. Repeatedly the patent conveys, column 1, column 5, column 6, that .0005 is within the scope of the invention. And we cited the Continental versus Intel case, and I would submit that as instructive here, where even an embodiment that was disparaged, criticized, deemed not to be part of the invention and suggested to be in the prior arc, even that isn't excluded from the claim because the plain language embraces it. Here we have no criticism. We heard that 10 minutes ago from my opponent. We have no suggestion that .0005 is outside the scope of the invention. The patent says otherwise. No suggestion that .0005 is in the prior arc. Everyone agrees that it's not in the prior arc. So the notion that that should somehow be excluded because it didn't perform quite as well as .001 is completely unsupportable, I would submit, under this court's plain construction jurisprudence. Did that answer Your Honor's question? I'm mindful that I haven't addressed obviousness at all. Neither did your opposite comment, so I think we're going to leave that where it lies. Perfect. Thank you. Thank you very much, Your Honor. Is that all? Eight minutes. Just trying to even things out. You don't need to use all the eight minutes you have. Thank you, Your Honor. I want to pick up on one thing I heard Esther Zemka's counsel say about this court's jurisprudence and the use of additional decimal points. And I believe I heard that there is no precedent for the number of decimals used in the specification mattering. And I think that's contrary to the Vizcase case that the party discussed in the briefing. And if you look at 261 F. 3rd 1322, this court said in supporting its construction to add another significant digit to the claim term in that case, said, in addition, I'm quoting, the first family specifications illustrate use of the third decimal place for the densities of other classes of polyethylenes. Referring to that is an important piece of intrinsic evidence supporting the construction that was used in that case. In that case, what came before the third decimal place? Only zeros or were there other numbers? I believe it was a 0.91. And then this court added a zero after the one. I think I have that right. Yes. There was some prosecution history there that made that. That's what made that important, right? There was a prosecution history where they said that they, I think, defined it as 0.910 during the prosecution. Is that right? They referred to the limitation in that way in prosecution. And that was a clear signal to this court and to one skilled in the art that that level of precision, that was where the rounding should take place in that case because that's where they were drawing the line. In this case, it's not exactly the same. We don't have a statement like that in the prosecution history. But I would submit it's equally clear from the intrinsic record that we have here that just rounding from the third decimal place in this case is equally problematic, the data in the case. The reason why is because the specification discloses 0.005, which shows that in the different testing that they did, it makes it that number is the most significant digit. Is that what your point is, or am I missing that? I think that's right. Those data there demonstrate that those formulations were different and the 0.005 was worse than the 0.001. The construction that would conflate those two would not be correct. What else is there, if anything? Am I missing anything? Is there any other piece of intrinsic evidence, or even extrinsic in the record, that helps me to know that that is the digit that I should be looking at? I think we've talked about the intrinsic evidence that we rely on. Specifically for that point, is there something else that suggests that I should be looking at that place? Other than words about and such, is there any place else where there's some suggestion that you need to go to the fourth place? I guess I would point you around to the two things. During prosecution, as you noted in your questions to my colleague, there were claims that were presented that had ranges. There was a claim at Appendix 16 through 21, Claim 23 that was presented at one point, that recited 0001, 0005, or 001, indicating, again, that those are different formulations that would be considered differently in the specification. Also, I mentioned to Your Honor before that there was no expert testimony presented during the claim construction. However, Mylan's expert, Dr. Pritchard, did touch briefly on the District Court's claim construction or the issue of claim construction during his testimony at trial. This is at Appendix 9778 to 9779, where he said that himself looking at this as one skilled in the art would look at rounding based on the precision of the reported formulations, which is similar to the approach we've taken in our construction. I understand that. That kind of makes sense to me. But Your Honor makes the point that, you know, in this field when you're using these numbers with the one digit, that that's the important digit, and everybody would understand that the rounding would occur from that. So that even if they use a formulation with 0005, 0001, and then 001, they actually meant, they did not mean the same rounding for each. They intended different scoring for all of those numbers. And so 0005 may round to a much more limited range than 001, but that's what somebody reading this specification would understand from this test. What's your response to that? So that might be the case if this, again, was just an abstract math problem. Somebody looking at just bare numbers on the page might think that's the way each individual one is rounded. There might even be cases where that's appropriate. I think the problem here in this case is that taking that approach with the intrinsic record we have here means that the 001 in the claims would mean something different than it meant in the specification. And that, I think, is an untimable situation in terms of claim construction. Well, what's your support for that? I mean, I still, you say that, but what in the specification suggests that the 001 doesn't round to the full range of the claim construction the district court gave it beyond the notion that things were tested at lower percentages? Things were tested at lower percentages that would run into the district court's construction. So the 0005 was tested and was shown to be different than the 001 and be one of the worst in almost all of the tests that were performed. So I think that precludes looking at the 001 being that broad, reaching that far. In addition, I don't think it makes a lot of sense. If you take that approach, there would be different magnitude of wiggle room depending on which formulation you're looking at. So the 0005 and 0001 would have plus or minus half a ten thousandth of a percent. That magnitude would get ten times bigger at the 001 formulations and then ten times bigger again. Did they test any at the 0.0 something range? Yeah, there was 0.01, 0.03, and 0.05. Those were all tested and again, showed different performance in all the tests. Some up in that area were what was distinguished in the past two sources. One was 0.025 and one was much higher than that. Both of them north of the bubble range that the district court adopted here. There was prior art before the examiner that had numbers like that? Yeah, Weir and Mead. Both of them were above the northern end of the bubble range that the district court adopted here. Well, Mead did not provide a number at all. I think this is an important point about the prosecution. Your Honor looks to appendix 16205. That's where the examiner is discussing the obviousness rejection that the examiner was making. The examiner is not citing any particular number from either of the primary prior art references that are part of the rejection. The examiner is relying on an optimization rationale to get to the 001 that's in the claims. The examiner was not citing some higher number or some lower number. The examiner was saying these references give us the ingredients and one of the skill in the art would optimize to get there. And so the applicants in responding to that were trying to differentiate their 001 as being unexpectedly superior, better, versus the prior art to get around that kind of rejection. Thank you. I think your clock has run down. May I make one more quick point, Your Honor? Quick. I just want to let the court know that there is some real-world urgency for Mylon here in this particular case, as reflected by the party stipulation to an expedited briefing schedule here. The district court's we-submit-erroneous judgment in this case has blocked Mylon's first file to ANDA and continues to do so until it's out of the way. So we would request that the court reverse the claim construction or reverse the infringement judgment that was based on that. Anything further? Nope. There are nothing further. Thank you. Thanks to both counsel. The case is submitted and the court will stand in recess. All rise.